UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re NOKIA CORPORATION SECURITIES
LITIGATION

This Document Relates To:

      ALL ACTIONS.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:    Civil Action No. 1:19-cv-03509-ALC

:    <u>CLASS ACTION</u>

:

:    <u>Oral Argument Requested</u>

:

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS
NOKIA CORPORATION AND RAJEEV SURI'S MOTION TO DISMISS
<u>THE SECOND CONSOLIDATED AMENDED COMPLAINT</u>**

Jay B. Kasner
Susan L. Saltzstein
Jeffrey S. Geier
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
jay.kasner@skadden.com
susan.saltzstein@skadden.com
jeffrey.geier@skadden.com

*Attorneys for Nokia Corporation
   and Rajeev Suri*

**TABLE OF CONTENTS**

Page

Table Of Authorities .................................................................................................. ii

Preliminary Statement.................................................................................................1

Argument ...................................................................................................................4

    A.    Absence of An Actionable Misstatement ..................................................4

        1.    Plaintiff Has Not Identified Any False or Misleading Statements ..............4

        2.    Many of the Statements Highlighted in the Complaint Are
              Nonactionable Puffery or Statements of Opinion......................................12

        3.    The PSLRA Safe-Harbor Protects Many of the Statements ......................14

    B.    Absence of Scienter .................................................................................15

    C.    Plaintiff's Section 20(a) Claim Should Be Dismissed ...........................20

Conclusion ...............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abramson v. NewLink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) .......................................................................................................14

*In re Adient plc Securities Litigation*,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) .........................15, 16

*In re Aetna Inc. Securities Litigation*,
34 F. Supp. 2d 935 (E.D. Pa. 1999) ............................................................................................6

*In re Akorn, Inc. Securities Litigation*,
240 F. Supp. 3d 802 (N.D. Ill. 2017) ....................................................................................6, 14

*In re Allergan PLS Securities Litigation*,
No. 18 Civ. 12089 (CM), 2019 WL 4686445 (S.D.N.Y. Sept. 20, 2019) .........................12

*Arkansas Teachers Retirement System v. Goldman Sachs Group, Inc.*,
955 F.3d 254 (2d Cir. 2020)...........................................................................................................8

*In re Atlas Air Worldwide Holdings, Inc. Securities Litigation*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004).......................................................................................18

*In re Avon Securities Litigation*,
No. 19 Civ. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) .........................13

*In re BP p.l.c. Securities Litigation*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ......................................................................................17

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012).......................................................................................13

*In re Citigroup Inc. Securities Litigation*,
753 F. Supp. 2d 206 (S.D.N.Y. 2010).......................................................................................13

*Citiline Holdings, Inc. v. IStar Financial Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010).......................................................................................17

*City of Birmingham Retirement & Relief System v. Credit Suisse Group AG*,
No. 17 Civ. 10014 (LGS), 2019 WL 719751 (S.D.N.Y. Feb. 19, 2019)...........................17

*City of Pontiac General Employees Retirement System v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012).................................................................................13, 17

*Colbert v. Rio Tinto PLC,*
    No. 19-2711-cv, 2020 WL 4516774 (2d Cir. Aug. 6, 2020) ...............................................9

*Construction Laborers Pension Trust for Southern Cal. v. CBS Corp.,*
    433 F. Supp. 3d 515 (S.D.N.Y. 2020)...................................................................................17

*Das v. Rio Tinto PLC,*
    332 F. Supp. 3d 786 (S.D.N.Y. 2018)....................................................................4, 18, 20

*Dobina v. Weatherford International Ltd.,*
    909 F. Supp. 2d 228 (S.D.N.Y. 2012)...................................................................................17

*Employees Retirement System of Government of Virgin Islands v. Blanford,*
    794 F.3d 297 (2d Cir. 2015)...................................................................................................17

*In re EVCI Colleges Holding Corp. Securities Litigation,*
    469 F. Supp. 2d 88 (S.D.N.Y. 2006)....................................................................................15

*In re Express Scripts Holdings Co. Securities Litigation,*
    773 F. App'x 9 (2d Cir. 2019) .................................................................................................2

*Fadem v. Ford Motor Co.,*
    352 F. Supp. 2d 501 (S.D.N.Y. 2005)..................................................................................12

*Florida State Board of Administration v. Green Tree Financial Corp.,*
    270 F.3d 645 (8th Cir. 2001) .................................................................................................19

*Freudenberg v. E\*Trade Financial Corp.,*
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................4, 15, 18

*Friedman v. Endo International PLC,*
    No. 16-CV-3912 (JMF), 2018 WL 446189 (S.D.N.Y. Jan. 16, 2018) ...............................8

*Galestan v. OneMain Holdings, Inc.,*
    348 F. Supp. 3d 282 (S.D.N.Y. 2018).........................................................5, 6, 11, 13, 15

*Gauquie v. Albany Molecular Research, Inc.,*
    No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016)...................17

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc.,*
    422 F. Supp. 3d 821 (S.D.N.Y. 2019)....................................................................5, 6, 15

*In re Hi-Crush Partners L.P. Securities Litigation,*
    No. 12 CIV. 8557 (CM), 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013)............................18

*In re Iconix Brand Group, Inc.,*
    No. 15 Civ. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017)..........................19

*Illinois State Board of Investment v. Authentidate Holding Corp.*,
    369 F. App'x 260 (2d Cir. 2010) ................................................................15

*Indiana Public Retirement System v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016)........................................................................15

*In re Insys Therapeutics, Inc. Securities Litigation*,
    No. 17 Civ. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018) ..........................4

*Jackson v. Abernathy*,
    930 F.3d 94, 99 (2d Cir. 2020) ................................................................18

*Johnson v. Sequans Communications S.A.*,
    No. 11 CIV. 6341 (PAC), 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ...........................14

*In re JPMorgan Chase & Co. Securities Litigation*,
    2007 WL 4531794 (N.D. Ill. Dec. 18, 2007) ......................................................19

*KBC Asset Management NV v. 3D Systems Corp.*,
    Civ. A No. 0:15-CV-02393-MGL, 2016 WL 3981236 (D.S.C. July 25, 2016) ................17

*Lipow v. Net1 UEPS Technologies, Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)...................................................................19

*Local No. 38 International Brotherhood Of Electrical Workers Pension Fund v.*
    *American Express Co.*,
    724 F. Supp. 2d 447 (S.D.N.Y. 2010)...................................................................16

*In re Loral Space & Communications Ltd. Securities Litigation*,
    No. 01 Civ. 4388(JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) .............................19

*In re MF Global Holdings Ltd. Securities Litigation*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)...................................................................18

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................17

*Oklahoma Law Enforcement Retirement System v. Telefonaktiebolaget LM Ericsson*,
    No. 18-CV-3021 (JMF), 2020 WL 127546 (S.D.N.Y. Jan. 10, 2020) .............................13

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015).................................................................................14

*In re Openwave Systems Securities Litigation*,
    528 F. Supp. 2d 236, (S.D.N.Y. 2007)...................................................................19

*In re OSG Securities Litigation*,
    12 F. Supp. 3d 622 (S.D.N.Y. 2014)...................................................................20

iv

*In re Philip Morris International Inc. Securities Litigation*,
  437 F. Supp. 3d 329 (S.D.N.Y. 2020)....................................................................15

*Plumbers & Steamfitters Local 137 Pension Fund v. American Express Co.*,
  No. 15 Civ. 5999 (PGG), 2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017) ........................10

*In re Razorfish, Inc. Securities Litigation*,
  No. 00 CIV. 9474 (JSR), 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)...........................5

*Roofer's Pension Fund v. Papa*,
  No. 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018) ....................................................6

*In re Salix Pharmaceuticals, Ltd.*,
  No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ............11, 15, 17

*In re Scholastic Corp. Securities Litigation*,
  252 F.3d 63 (2d Cir. 2001)...................................................................................................4

*SEC v. Laura*,
  No. 18-CV-5075, 2020 WL 1434114 (E.D.N.Y. Mar. 24, 2020)........................................4

*Setzer v. Omega Healthcare Investors, Inc.*,
  No. 19-1095, 2020 WL 4431902 (2d Cir. Aug. 3, 2020) ..................................................15

*In re Signet Jewelers Ltd. Securities Litigation*,
  No. 16 Civ. 6728 (CM)(RWL), 2019 WL 3001084 (S.D.N.Y. July 10, 2019)..................8

*In re Signet Jewelers Ltd. Securities Litigation*,
  No. 16-CV-6728 (CJM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ....................11, 13

*In re Sketchers USA, Inc. Securities Litigation*,
  No. 18 Civ. 8039 (NRB), 2020 WL 1233759 (S.D.N.Y. Mar. 12, 2020)........1, 3, 6, 10, 20

*Speakes v. Taro Pharmaceutical Industries, Ltd.*,
  No. 16-cv-08318 (ALC), 2018 WL 4572987 (S.D.N.Y. Sept. 24, 2018)...........................4

*Steamfitters' Industry Pension Fund v. Endo International PLC*,
  771 F. App'x 494 (2d Cir. 2019) .......................................................................................8

*In re STEC Inc. Securities Litigation*,
  Civ. Nos. 09-1304, 09-1306, 09-1320, 09-1460, 09-8536, 2011 WL 2669217
  (C.D. Cal. June 17, 2011) .................................................................................................10

*Teamsters Allied Benefit Funds v. McGraw*,
  No. 09 Civ. 140 (PGG), 2010 WL 882883 .......................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................................4

*In re Textron, Inc. Securities Litigation*,
   No. 19 Civ. 7881 (DLC), 2020 WL 4059179, at *12 (S.D.N.Y. July 20, 2020) ...............7

*In re U.S. Bioscience Securities Litigation*,
   806 F. Supp. 1197 (E.D. Pa. 1992) ................................................................................11

*In re Vale S.A. Securities Litigation*,
   No. 19 CV 526 (RJD) (SJB), 2020 WL 2610979 (E.D.N.Y. May 20, 2020)....................17

*In re Veon Ltd. Securities Litigation*,
   No. 15-CV-08672 (ALC), 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018) ....................3, 17

*In re Viropharma Inc. Securities Litigation*,
   21 F. Supp. 3d 458 (E.D. Pa. 2014) ...............................................................................18

*In re Vivendi Universal, S.A. Securities Litigation*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003)..............................................................................19

*In re Wellcare Management Group, Inc. Securities Litigation*,
   964 F. Supp. 632 (N.D.N.Y. 1997)..................................................................................19

*Woolgar v. Kingstone Companies, Inc.*,
   No. 1:19-cv-05500-RA, 2020 WL 4586792 (S.D.N.Y. Aug. 10, 2020)..................7, 12, 16

## STATUTES

15 U.S.C. § 78u-4(b)(1) .........................................................................................................1

Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiff claims that he has alleged "that Defendants materially misrepresented the progress and effectiveness of the Alcatel integration, and that their related statements about the integration and related 5G transition were false and misleading for that reason." (Opp. at 2.) But even a cursory review reveals that Plaintiff's argument is unfaithful to Nokia's actual disclosures and the applicable law.

"A statement is false for the purpose of Section 10(b) and Rule 10b-5 if it was false 'at the time it was made.' To state a claim, 'plaintiffs must do more than say that the statements [at issue] were false and misleading; they must demonstrate with specificity why and how that is so.'" *In re Sketchers USA, Inc. Sec. Litig.*, No. 18 Civ. 8039 (NRB), 2020 WL 1233759, at *5 (S.D.N.Y. Mar. 12, 2020) (citation omitted) (alteration in original). This is not a "fabricated pleading standard" (Opp. at 16, n.2), but the well-settled standard imposed *by statute*. *See* 15 U.S.C. § 78u-4(b)(1). Plaintiff's attempt to rewrite Nokia's disclosures and plead falsity based on mere *ipse dixit* assertions does not satisfy this mandatory pleading standard.

The Complaint has offered no document, no confidential witness and no well-pleaded fact to support Plaintiff's bald allegation that Defendants knew that their statements were false

---

[1]   Undefined capitalized terms shall have the meaning ascribed in the Memorandum of Law In Support of Defendants Nokia Corporation and Rajeev Suri's Motion to Dismiss the Second Consolidated Amended Complaint (ECF No. 62) ("Defendants' Brief" or "Br."). Lead Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss the Second Consolidated Amended Complaint (ECF No. 67) shall be referred to as the "Opposition" or "Opp." and the exhibits attached to the Declaration of Chad Johnson (ECF No. 68) shall be referred to as "LP Ex."

and misleading at the time they made them.  Instead of specifics, Plaintiff concludes that a March 2019 disclosure of an alleged compliance issue at the former Alcatel business rendered all of Nokia's prior statements about integration false.  But Plaintiff has not – and cannot – explain how discovery of such a compliance issue is inconsistent with any of Nokia's earlier disclosures, particularly where Nokia cautioned that future compliance issues could be uncovered at Alcatel. (*See, e.g.*, Ex. 1 at 76.)  Plaintiff also claims that Nokia's October 2019 disclosure relating to 5G[2] demonstrates the falsity of Nokia's earlier 5G and integration statements.  But Plaintiff cannot explain how Nokia's later disclosure rendered materially false and misleading any of Nokia's earlier disclosures, particularly where Nokia provided iterative, timely disclosures that reflected on 5G developments, and explained that risks remained.  (*See, e.g.*, Ex. 9 at 18; Ex. 14 at 6; Opp. at 6 ("this situation does create some near term risk"), 7 ("challenges").)  Plaintiff also fails to show Defendants knew any statements were false *at the time made*.

Plaintiff continues to pluck isolated statements from Nokia's disclosures and characterize those statements out of context, while ignoring the numerous risk disclosures accompanying the statements.  (*See* Br. at 20-27.)  But Nokia's disclosures should be judged by their actual content and context (*see id.* at 7-19), not by Plaintiff's reimagination.  *See In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 12 (2d Cir. 2019).

Perhaps in recognition of the Complaint's defects, Plaintiff turns to documents that were not cited to in the Complaint – post-class period analyst reports and opinion pieces.  But none of those documents say one word about the information that was in the Defendants' hands at the

---

[2]    The Complaint fails to quote the 5G Disclosure  (*See* Br. at 18-19.)  Instead, Plaintiff attributes to Defendants an "acknowledgment" of "massive problems and delays in Nokia's 5G rollout" (Opp. at 2) and that "it had experienced severe difficulties with the initial phase of its 5G rollout and was dramatically behind in the race to 5G." (*Id.* at 11.)  We respectfully commend the Court to a full review of the 5G Disclosure.  (Ex. 11.)

time of the challenged statements.  And whatever weight these reports and articles are given (and it should be limited to non-existent), they do not change what Nokia actually disclosed or establish the falsity of any statements made by Nokia.  Courts have rejected just such tactics. *See Sketchers*, 2020 WL 1233759, at *9.

Defendants also have identified authority rejecting statements substantially similar to those alleged as non-actionable puffery such as "Nokia is well positioned" (Opp. at 7) and "we are in a very strong position for 5G" (*Id.* at 8.)  The same is true with respect to the various statements of opinion cited throughout the Complaint.  (*See* Br. at 33-34.)  And Plaintiff's arguments against application of the PSLRA safe harbor are equally without merit.  (*See id.* at 30-33.)  The majority of the statements alleged are nonactionable puffery, statements of opinion and/or protected by the safe-harbor.

Plaintiff's failure to allege Defendants' scienter with particularity constitutes an independent basis to dismiss.  (*See id.* 35-39.)  Plaintiff has identified nothing supporting an inference that Defendants had information showing that any statements were false when made. *See In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672 (ALC), 2018 WL 4168958, at *17 (S.D.N.Y. Aug. 30, 2018).  Despite devoting nine pages to the issue (Opp. at 31-39), Plaintiff does not identify a single fact or document presented to Mr. Suri or the Integration Board demonstrating the falsity of any statement.  And it is well-settled that an executive position or board membership is insufficient to plead scienter.  *See In re Veon*, 2018 WL 4168958, at *17.

In the end, Plaintiff complains that Nokia encountered unexpected obstacles in its quest to roll-out next generation technology.  But Nokia warned of risks, and difficulties when dealing with new and cutting-edge technology are hardly unprecedented.  Because the Complaint suffers from numerous defects, it ought to be dismissed with prejudice.

3

## ARGUMENT

### A.    Absence of An Actionable Misstatement

#### 1.    Plaintiff Has Not Identified Any False or Misleading Statements

<u>Integration Statements Were Not False</u>.[3]  Plaintiff contends that Nokia disclosed: "'[T]hat

the Company was "***beyond*** the integration;'" that "'the integration of Alcatel-Lucent [was]

***behind us***;'" that the "'financial synergies and cultural integration . . . were ***achieved in full***;'"

that the "'cultural integration . . . ***went beautifully***;'" and that the integration's "'heavy lifting is

***over***.'"  (Opp. at 17 (citations omitted) (alterations in original).)  Plaintiff incorrectly asserts that

these statements were false because of the Compliance Disclosure and the 5G Disclosure.

First, Plaintiff claims that the Compliance Disclosure was "on its face, tantamount to an

admission that [Defendants'] earlier declarations about the successfully completed integration

were materially false and misleading." (*Id*. at 22.)   But Plaintiff never explains his assertion,

and there is nothing inconsistent between the discovery of a compliance issue somewhere in the

worldwide operations of an acquired company and alleged optimistic statements about an

integration.  This is particularly the case given Nokia directly warned that, with respect to

Alcatel, "we may identify future control deficiencies that are material weaknesses in the future"

---

[3]     The PSLRA requires plaintiffs to "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 799 (S.D.N.Y. 2018) (citation omitted) (alteration in original).  The cases Plaintiff cites are in accord.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider documents incorporated by reference); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69-70 (2d Cir. 2001) (reciting PSLRA standard); *Speakes v. Taro Pharma. Indus., Ltd.*, No. 16-cv-08318 (ALC), 2018 WL 4572987, at *3 (S.D.N.Y. Sept. 24, 2018) (court may consider documents referenced in complaint and citing PSLRA standard); *In re Insys Therapeutics, Inc. Sec. Litig.* No. 17 Civ. 1954 (PAC), 2018 WL 2943746, at *4 (S.D.N.Y. June 12, 2018) (falsity pleaded with specificity); *SEC v. Laura*, No. 18-CV-5075, 2020 WL 1434114, at *7 (E.D.N.Y. Mar. 24, 2020) (complaint pleaded detailed lists); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 179 (S.D.N.Y. 2010) (citing PSLRA standard).

4

(Ex. 1 at 76) and that "[w]e may also be subject to claims, fines, investigations or assessments for conduct that we failed to or were unable to discover." (*Id.* at 79.)  Likewise, Plaintiff asserts that the 5G Disclosure shows that all of Nokia's prior integration statements were false when made.  (Opp. at 17-18.)  But there is no inconsistency between the content of any of Nokia's integration disclosures and the 5G Disclosure, and Plaintiff cannot cogently explain how 5G difficulties in 2019 somehow means that everything the Company stated prior to that point about integration was false when made.

There are many components to an integration, and even the successful completion of all components does not guarantee the future success of the merged company (let alone its development of next-generation wireless technology).  It is for this reason that Judge Rakoff held that the term's imprecision makes it "too loose and uncertain a term on which to premise a claim of securities fraud." *In re Razorfish, Inc. Sec. Litig.*, No. 00 CIV. 9474 (JSR), 2001 WL 1111502, at *2 (S.D.N.Y. Sept. 21, 2001).  Plaintiff's attempt to extrapolate from purported optimistic statements about integration an assurance that Nokia would immediately be successful in its efforts to launch the next generation of wireless technology contorts the word "integration" far beyond its meaning.

Plaintiff disregards *Razorfish* and Defendants' numerous other authorities by leaning on *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc.*, 422 F. Supp. 3d 821 (S.D.N.Y. 2019) and *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282 (S.D.N.Y. 2018).  But those cases demonstrate the insufficiency of Plaintiff's claim.  Relying on statements from four confidential witnesses, the *AMC* plaintiff alleged specific information known to the Defendants at the time the statements were made relating to infrastructure issues and underinvestment.  422 F. Supp. 3d at 851.  Because of these known issues, Plaintiff had

5

alleged plausibly the falsity of statements such as "[t]here have literally been no operational snafus of note," which investors could have relied on "to mean the more 'concrete and measurable' fact that zero significant obstacles had occurred." *Id* at 845-46. Likewise, in *Galestan* plaintiff pled specific facts which "Defendants allegedly knew, and failed to disclose, had caused productivity to decrease, delinquencies to increase, and growth to slow," 348 F. Supp. 3d at 298, including through accounts from 11 confidential witnesses who provided detail that Defendants "not only received reports detailing productivity and delinquency issues at OneMain Financial branches, but also how they regularly had access to such reports." *Id.* 348 F. Supp. 3d at 289. Plaintiff has alleged nothing remotely similar here.[4]

Second, contrary to Plaintiff's attempt to reframe Defendants' argument as asking "the Court to hold, as a matter of law, that Defendants did not communicate to the market that the Alcatel integration was complete and successful" or that "the Court cannot plausibly infer that the integration suffered from significant problems" (Opp. at 17), Defendants seek to have their disclosures judged by their actual content and context, not by Plaintiff's characterizations, as is required by controlling precedent.[5] (*See* Br. at 22-23 (citing cases).) Taking the above quoted

---

[4]     Plaintiff's other out-of-Circuit citations are similar. *See In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 817 (N.D. Ill. 2017) (claim based on integration being "on track" where there were problems "integrating its accounting system" which led to a "detrimental effect on the accuracy of Akorn's financial statements"); *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at *13 (D.N.J. July 27, 2018) (statements about specific milestones, including that "'[b]ack office is working smoothly' and '[w]e supplemented Omega's contracted manufacturing with our manufacturing infrastructure'"); *In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 947 (E.D. Pa. 1999) (statement that the integration was highly successful is puffery).

[5]     Plaintiff appears to assert that his "impression[s]" are sufficient to state a claim. (Opp. at 18, n.3.) Not so. "The key question in considering the misleading nature of a statement is 'whether defendants' representations, taken together and in context, would have misle[d] a reasonable investor,' not whether it is susceptible to any interpretation that could generate misleading impressions when read in isolation." *Sketchers*, 2020 WL 1233759, at *9 (citation omitted) (alteration in original).

cornerstone of Plaintiff's integration argument demonstrates Plaintiff's tactic.  His references to "beyond the integration" and "behind us" are clipped from a conference call transcript that expressly incorporated as a risk that integration efforts remain ongoing, and that compliance issues may be uncovered in the future.  (*See* Br. at 8-10; Ex. 7 at 4; Ex. 1 at 76.)  The reference to "financial synergies and cultural integration" being "achieved in full" is to a long-term incentive compensation award, not an update on the status of the integration (SAC ¶ 58), and Plaintiff does not allege the underlying targets were not met.  And the references to "cultural integration" and "heavy lifting" are excised from a transcript that included statements that "usually it's a 3- to 5-year period you bring the cultures together" and "I'd say that integration is over at the end of this year.  Cultural integration is 80% over."  (*See id.* ¶¶ 68-72; Ex. 19 at 11) *see also In re Textron, Inc. Sec. Litig.*, No. 19 Civ. 7881 (DLC), 2020 WL 4059179, at *12 (S.D.N.Y. July 20, 2020) (statement about integration must be considered in context).[6]

Undeterred, Plaintiff simply repeats his characterizations, asserting that "the Defendants portrayed the integration as a complete success." (Opp. at 14.)  But early Nokia warned that the integration might not be successful (*see* Br. at 21, n.13), and Defendants addressed each of the disclosures he cites in support of his conclusory statement in full.  (*See* Br. at 7-8 (pre-class period statements); 8-10 (April 27, 2017 disclosures); 12 (February 1, 2018 disclosures); 13 (2017 Form 20-F); 14-15 (October 25, 2018 disclosures); 15 (November 12, 2018 conference); 16 (2018 Form 20-F).)  Plaintiff has not identified any false or misleading statement.

---

[6]     Plaintiff's attempted focus on "cultural integration" (Opp. at 12, 17, 21) misses the point. Setting aside the subjective nature of "cultural integration," integration has nothing to do with alleged compliance issues.  That a "workers' representative" (about whom Plaintiff offers no detail) expressed a view in 2019 that there were "disagreements over priorities and staffing" does not demonstrate that Mr. Suri's view that the cultural integration "went beautifully" was not his view (or accurate) at the time of the statement. *Cf. Woolgar v. Kingstone Companies, Inc.*, No. 1:19-cv-05500-RA, 2020 WL 4586792, at *13 (S.D.N.Y. Aug. 10, 2020).

<u>5G Statements Were Not False</u>.  Plaintiff complains that "the market understood Defendants' Class Period Statements to mean that the Alcatel integration and associated 5G transition were free of material integration problems."  (Opp. at 15.)  Plaintiff resorts to conclusory, untethered inferences.  By way of example, Plaintiff points vaguely to "Airscale base stations and associated ReefShark chipsets."  (*Id.* at 20.)  But nowhere does Plaintiff suggest that the products did not work as stated, or that anything else disclosed about these products was false when made.  Instead, Plaintiff cites references to "roadmaps," each of which also recognized difficulties and risks.  (SAC ¶ 61 ("[w]e all face some risks as we push to get 5G products to market"); ¶ 64 ("we continue to increase our investment in this critical technology"); ¶ 70 ("there are hiccups, but it's been positive"); ¶ 84 ("there is still some work to do.").)[7]  Plaintiff's fallback citation to a 2019 analyst report discussing "ASIC semiconductors" (Opp. at 20), does nothing to show the falsity of any statement at the time it was made.  And, notwithstanding this analyst's after-the-fact opinion about Nokia's semiconductors, the 5G Disclosure reflected that Nokia had 15 live 5G networks at that time.[8]  Plaintiff has identified nothing false about Nokia's actual 5G-

---

[7]     Defendants addressed in detail Plaintiff's inaccurate reference to "5G ready" statements and statements about being "fully in the deployment phase."  (*See* Br. at 11; Opp. at 7, 9, 10.)

[8]     While a "corrective" disclosure need not be a "mirror image" of a prior statement (*see* Opp. at 25 (citing cases)), Plaintiff still must plead falsity in accordance with the PSLRA's heightened requirements.  (*See supra* A.I.); *see also Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 259 n.1 (2d Cir. 2020) (a corrective disclosure "reveals to the market the falsity of a prior statement.").  The cases Plaintiff cites regarding corrective disclosures address loss causation, not falsity.  *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ. 6728 (CM)(RWL), 2019 WL 3001084, at *14 (S.D.N.Y. July 10, 2019) (class certification opinion in an action that had survived a motion to dismiss).  To the extent the market allegedly reacted to the 5G Disclosure, "[t]he securities laws . . . do not provide remedies for bad business decisions; they provide remedies only for fraud."  *Friedman v. Endo Int'l PLC*, No. 16-CV-3912 (JMF), 2018 WL 446189, at *7 (S.D.N.Y. Jan. 16, 2018), *aff'd sub nom. Steamfitters' Indus. Pension Fund v. Endo Int'l PLC*, 771 F. App'x 494 (2d Cir. 2019).

related disclosures.  *See Colbert v. Rio Tinto PLC*, No. 19-2711-cv, 2020 WL 4516774, at *4 (2d Cir. Aug. 6, 2020).

Plaintiff resorts to sleight of hand, arguing that Nokia's statements about integration constituted implicit assurance of the success of Nokia's 5G work.  (Opp. at 19-21.)  But Plaintiff's logic falters when Nokia's 5G statements are considered.  For instance, Plaintiff complains that it was not until October 24, 2019 that Nokia "finally acknowledged that it had experienced severe difficulties with the initial phase of its 5G rollout and was dramatically behind in the race to 5G" (*Id.* at 11; *see also* n.2 *supra*) and that Nokia referenced "the successful Alcatel Lucent integration" in Nokia's March 21, 2019 Form 20-F.  (Opp. at 9.)  But in disclosures between March and October 2019, Nokia explained that "we faced a significant hit to services profitability related to cost overruns and under performance in 2 large projects, driven by near-term 5G delays" (Ex. 21 at 7) and that "it will be natural for 5G gross margins to be lower at the beginning, but to expand over time." (Ex. 22 at 11.)  It was against this backdrop that the 5G Disclosure noted that "some of the risks that we flagged previously related to the initial phase of 5G are now materializing."  (Ex. 11 at 1-2.)

As explained in Defendants' Brief, Nokia's disclosures with respect to 5G were clear and iterative, including statements such as "5G requires additional near-term investment" (Ex. 9 at 18), "there is plenty of heavy R&D lifting still to come in the sprint to 5G" (Ex. 14 at 6) and "[w]e all face some risks as we push to get 5G products to market" (SAC ¶ 61).  Plaintiff's Opposition, however, continues to repeat excerpts of certain disclosures, plucked from context, asserting that "Defendants made numerous materially false or misleading statements about the Company's supposed 5G-readiness." (Opp. at 14.)  Plaintiff  ignores that Defendants addressed each of the disclosures he cites in support in full.  (*See* Br. at 10-12 (2017 5G-related

9

statements); 13-15 (2018 5G-related statements); 16-19 (2019 5G-related statements).)  Plaintiff has identified nothing false about these disclosures.

Plaintiff Cannot Use Analyst Reports/Opinion Pieces To Manufacture a False Statement.
Having failed to present any document, witness or fact demonstrating the falsity of any statement made by Nokia during the putative class period, Plaintiff seeks refuge in a cherry-picked assortment of analyst reports and opinion pieces he claims reflect that "the market understood" Nokia's class period statements as "conveying" that there were no "substantial, systemic" integration issues.  (Opp. at 22-23.)  Plaintiff's argument is misplaced.

Earlier this year, Judge Buchwald  rejected an "effort to reverse-engineer a non-actionable statement into an actionable misstatement based on the securities analysts' interpretation or reaction," because limited references to analyst reports do not reflect the broader market, and because the actual statements "plainly did not amount to a guarantee or promise." *Sketchers*, 2020 WL 1233759, at *12-13.  Judge Gardephe rejected a similar effort, concluding that pointing to analyst reports "does not demonstrate that Amex's statements were responsible for the analysts' poor estimates." *Plumbers & Steamfitters Local 137 Pension Fund v. Am. Express Co.*, No. 15 Civ. 5999 (PGG), 2017 WL 4403314, at *14 (S.D.N.Y. Sept. 30, 2017), *aff'd sub nom. Pipefitters Union Local 537 Pension Fund v. Am. Express Co.*, 773 F. App'x 630 (2d Cir. 2019).  Judge Gardepehe highlighted as a defect the absence of any explanation as to how the specific analyst reports were selected.  *Id.* [9]

---

[9]   Plaintiff relies on *In re STEC Inc. Sec. Litig.*, Civ. Nos. 09-1304, 09-1306, 09-1320, 09-1460, 09-8536, 2011 WL 2669217 (C.D. Cal. June 17, 2011), but Judge Gardephe explained why that case is inapposite. *See American Express*, 2017 WL 4403314, at *14 n.7 (the court's "finding [in *STEC*] was made in response to defendants' argument that no reasonable investor could have been misled by their statements, given other information available to investors.  Here, as discussed above, defendants' statements were clear on their face.").  None of the other cases

Moreover, even if considered, Plaintiff's random assortment of analyst reports does not establish that "the market understood Defendants' Class Period statements to mean that the Alcatel integration and associated 5G transition were free of material integration problems" as Plaintiff contends. (Opp. at 15.) The only quotes from contemporaneous analyst reports offered by Plaintiff say nothing about 5G, and the quoted references to integration do not reflect the "understanding" Plaintiff claims. (*See* SAC ¶ 37.) Two of the quotes reflect that the analysts knew the aspects of the "integration" were ongoing. (*See id.* (quoting Liberium report that issues "seem to be largely in the past"); *id.* (quoting Barclays report referring to "initial" integration).) And the other two quotes offer only the most generic of platitudes regarding the integration. (*See id.*) Plaintiff also fails to allege what else these analysts stated, much less the hundreds of other reports issued during the putative class period that he does not reference.

Unable to support his contentions with Nokia's actual disclosures, or even contemporaneous analyst reports, Plaintiff turns to post-class period analyst reports and opinion pieces. Not only are many of these reports not referenced in the Complaint, at most they hypothesize that Nokia's effort to integrate Alcatel may have contributed to delays associated with the massive technological lift that was needed to develop 5G capabilities.[10] (*See* Opp. at

---

identified by Plaintiff stand for the proposition that analyst reports can alter the terms of an issuer's disclosures. *See In re Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) ("[A] listener's misunderstanding of what was said does not, on its own, make a statement misleading."); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 16-CV-6728 (CJM), 2018 WL 6167889, at *13 (S.D.N.Y. Nov. 26, 2018) (referencing analyst beliefs after reviewing other indicia of falsity); *In re U.S. Bioscience Sec. Litig.*, 806 F. Supp. 1197, 1206 (E.D. Pa. 1992) (pre-PSLRA case declining to strike paragraphs referencing analyst reports); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d at 303.

[10]    Plaintiff asserts that a statement that "Suri's dealmaking victory hid [the] scale of task to merge companies" (Opp. at 22 at 22; LP Ex. 13) somehow suggests that Nokia's prior statements were false. That a substantial transaction "looked like a strategic win" (LP Ex. 13) at the time in no way suggests that prior disclosures about integration were false when made.

21-22; SAC ¶¶ 101-05); *see also Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005)  These articles do not suggest that any of Nokia's earlier disclosures were false or otherwise reflects the existence of a contemporaneous "understanding" that Nokia had already successfully completed all aspects of the integration and 5G work as Plaintiff contends.  Nor do they suggest any fact in the Defendants' hands at the time the statements were made that would have made the statements false at the time of issuance.  *See Woolgar*, 2020 WL 4586792, at *19.[11]

Having failed to identify any statement that was false or misleading, much less explained why the statement was false or misleading, Plaintiff's misrepresentation claim fails as a matter of law.  And Plaintiff does not assert the existence of any duty to disclose independent from the allegation that Nokia's disclosures were misleading.  (*See* Br. at 34-35.)  Because Plaintiff cannot identify any misleading statement, it cannot found a claim on any alleged omissions. [12]

### 2. Many of the Statements Highlighted in the Complaint Are Nonactionable Puffery or Statements of Opinion

<u>Nonactionable Puffery</u>.  Defendants identified at least fourteen plainly immaterial statements of corporate optimism and puffery highlighted in the Complaint including "[o]ur early

---

[11]    *In re Allergan PLS Securities Litigation*, No. 18 Civ. 12089 (CM), 2019 WL 4686445, *23 (S.D.N.Y. Sept. 20, 2019), cited by Plaintiff, involved disclosures that could have left the impression that the company's products were just as likely to cause cancer as the products of other companies – which was false because there was a reasonable inference that the company's products were more likely to cause cancer than other products on the market. *Id.*

[12]    Plaintiff does not defend the Complaint's attempt to state a claim based on the Compliance Statements (*see* Br. at 26-27), and, other than accusing Defendants of  "pretending they do not understand their own business" (Opp. at 25, n.12), Plaintiff fails to explain the alleged falsity of the numerous randomly bolded statements having nothing to do with integration or 5G scattered throughout the Complaint.  (*See* Br. at 26-27.)

12

progress in 5G is extremely strong" (SAC ¶ 64) and "Nokia is well positioned" (*Id*. ¶ 47; *see also* Br. at 28, n. 20, 29). Defendants also cited extensive case law demonstrating that analogous statements routinely are dismissed as nonactionable puffery. (*See id*. at 28-30 (citing cases).)

Without addressing the actual statements or the majority of the authorities cited by Defendants, the Opposition concludes that, because Nokia's Alcatel integration and 5G program "were the Company's most important focus during the Class Period," any statements about those topics cannot, as a matter of law, constitute nonactionable puffery.[13] (Opp. at 26-27.) Courts consistently reject statements touting a "corporat[ion's] 'excellence' and progress" as nonactionable puffery. *Okla. Law Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson,* No. 18-CV-3021 (JMF), 2020 WL 127546, at *7 (S.D.N.Y. Jan. 10, 2020).[14] The outcome has been the same regardless of the supposed "import" of the subject matter, and Defendants cited numerous cases addressing integration-related statements, most of which Plaintiff fails to address. (*See* Br.

---

[13] None of the cases cited by Plaintiff stands for such a proposition. *See In re Signet Jewelers*, 2018 WL 6167889, at *12 (evaluating statements about the "strength and management of Signet's credit portfolio"); *Galestan*, 348 F. Sup. 3d at 303 (statements about new loan offerings "while being aware of material productivity and delinquency concerns relating to the new loans that contradicted their public [statements].")

[14] Plaintiff claims that, because certain of Nokia's statements were made in response to analyst questions, they must not be puffery. (Opp. at 27, n. 14.) But not every response to an analyst question is material. Plaintiff also argues that statements made repeatedly to reassure the market may lose their status as puffery. (*Id*. at 26.) Plaintiff has not shown any such statements assuring the market, and the authorities he relies on reflect the distinction. *See In re Avon Sec. Litig.*, No. 19 Civ. 01420 (CM), 2019 WL 6115349, at *16 (S.D.N.Y. Nov. 18, 2019) (statements that Brazilian business was healthy when company presiding over "self-inflicted debt crisis."); *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd*., 866 F. Supp. 2d 223, 244 (S.D.N.Y. 2012) (representations that training program was "extensive"). Finally, Plaintiff claims that market reactions to information demonstrates materiality. (Opp. 27, n.15.) But this assumes Plaintiff's conclusion – i.e., that the disclosures in question corrected a prior statement. *See City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 368 (S.D.N.Y. 2012) (stock price reaction to 2.7% decrease in projected profit as a qualitative factor supporting materiality); *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 236 (S.D.N.Y. 2010) (market reaction to disclosure of CDO exposure supportive of materiality).

at 28 (*citing* cases).)  Statements almost directly paralleling the 5G-related statements about which Plaintiff complains also have been held to constitute nonactionable puffery.  *See Johnson v. Sequans Commc'ns S.A.*, No. 11 CIV. 6341 (PAC), 2013 WL 214297, at *14 (S.D.N.Y. Jan. 17, 2013) ("[W]e are better positioned to drive our roadmap to meet those needs" and that the company is "an early leader in the [4G] LTE market" are nonactionable statements of puffery.)

Nonactionable Opinion.  Plaintiff also has no meaningful response to Defendants' demonstration that numerous statements highlighted in the Complaint, including those beginning with "I believe" (SAC ¶ 43), "we believe" (*id.* ¶ 44) and "we expect" (*id.* ¶ 46), constitute nonactionable opinions because Plaintiff has not satisfied the *Omnicare* framework.  (*See* Br. at 33-34, *citing Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).)  In response, Plaintiff repeats his argument that "Defendants here made repeated positive statements about the integration and 5G transition that omitted to disclose truthful information about material problems in these areas."  (Opp. at 28.)  Plaintiff has neither identified such statements, nor explained how any of the Company's statements were false.[15] And *AMC* is off-point for the reasons discussed above.  (*See supra* A.I.)

### 3.   The PSLRA Safe-Harbor Protects Many of the Statements

Defendants identified a number of statements concerning both integration and 5G that are forward looking statements on their face that are protected by the PSLRA safe harbor and the bespeaks caution doctrine.  (*See* Br. 30-33.)[16]  Plaintiff does not dispute that Nokia provided

---

[15]    Unlike here, in *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020), plaintiff alleged a clear discrepancy between a CEO's "confident statement" regarding cancer survival rates and omission that half the studies provided conflicting information.

[16]    Plaintiff cites *Akorn* for the proposition that a statement that something is "on track" is a statement of fact (Opp. at 30), but *Akorn* concluded that the term included both a nonactionable future looking component and a potentially actionable present component.  *Akorn*, 240 F. Supp.

substantial and specific risk disclosures going to the very issues underlying the Complaint.  The

Opposition merely concludes that "risk disclosures do not absolve Defendants'[sic] for their

multiple material misrepresentations concerning the supposed success of the integration and

resultant 5G transition."  (Opp. at 30.)  But this conclusory assertion does not alter that the

requirements for the safe harbor and bespeaks caution doctrine are fully satisfied.  *See In re*

*Philip Morris Int'l Inc. Sec. Litig.*, 437 F. Supp. 3d 329, 355-56 (S.D.N.Y. 2020).

**B.      Absence of Scienter**

"A complaint will survive 'only if a reasonable person would deem the inference of

scienter cogent and at least as compelling as any opposing inference one could draw from the

facts alleged.'"  *Setzer v. Omega Healthcare Inv'rs, Inc.*, No. 19-1095, 2020 WL 4431902, at

\*16 (2d Cir. Aug. 3, 2020) (citation omitted).[17]  Here, there are no suspicious stock sales alleged,

---

3d at 817.  Plaintiff here provides no facts suggesting that Nokia's "chipset development" was off track at the time of the statement, and the phrase "on track" may be entirely forward looking. *See In re Adient plc Sec. Litig.*, No. 18-CV-9116 (RA), 2020 WL 1644018, at \*19 (S.D.N.Y. Apr. 2, 2020).  The same is true of Plaintiff's other efforts to tease a present component out of statements about "moving" "beyond" or "into" something, where Plaintiff has not alleged anything false about any hypothetical "present" component.  (Opp. at 30.)  Plaintiff's other citations regarding the safe harbor also are off-point.  *See Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260, 264 (2d Cir. 2010) (statements not forward looking); *Galestan*, 348 F. Supp. 3d at 304 (omissions of known facts not protected); *Freudenberg*, 712 F. Supp. 2d at 194 (knowingly false statements not protected); *AMC*, 422 F. Supp. 3d at 847 (risk disclosures insufficiently meaningful); *In re EVCI Colls. Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 103 (S.D.N.Y. 2006) (case was a "rare" one not resolvable on pleadings); *In re Salix*, 2016 WL 1629341, at \*9 (present inventory levels).

[17]      *Omega* illustrates the deficiencies in Plaintiff's scienter allegations.  In *Omega*, the Second Circuit concluded that "[t]he facts as alleged create a compelling inference that Defendants made a conscious decision to not disclose the Loan in order to understate the extent of Orianna's financial difficulties."  *Setzer*, at \*8; *see also Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 96 (2d Cir. 2016).  There are no specific allegations in the Complaint allowing an equivalent inference with respect to Defendants.

no confidential witnesses and no documents demonstrating the falsity of any of Defendants' statements, and Plaintiff is left trying to cobble together facts routinely rejected.

Absence of Conscious Misbehavior / Recklessness.  Plaintiff's primary argument is that, before the putative class period, Mr. Suri indicated that the Nokia Business System "is a 'structured governance process with a high degree of granular visibility into the business'" and that there was an Integration Board.  (SAC ¶ 34.)  According to Plaintiff, because Mr. Suri stated that he is a "permanent attendee of these sessions, which are chaired by Marc Rouanne, our Chief Innovation Officer" (*id.*),[18] scienter may be inferred.  (*See* Opp. at 33-34.)

Plaintiff does not identify a single document, meeting or fact conveyed to either Mr. Suri or the Integration Board that would have alerted Defendants to the alleged falsity of any statements.  Instead, Plaintiff relies on the supposition that because Mr. Suri had some responsibility for the integration, he must have known that his statements were false.  But pointing to "channels" of information is insufficient.  *See Local No. 38 Int'l Brotherhood Of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).  In this respect, Plaintiff's allegations are no different than the scores of cases rejecting attempts to premise scienter on a defendant's executive position or membership on a board or committee.  *See, e.g., Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140 (PGG), 2010 WL 882883, at *11 (S.D.N.Y. Mar. 11, 2010; *see also Woolgar*, 2020 WL 4586792, at *25 (complaint failed to plead what was discussed at meetings) *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *27 (S.D.N.Y. Apr. 2, 2020) (meetings attendance alone is insufficient).  Establishing scienter requires plaintiffs to identify *specific* facts or documents that

---

[18]   Plaintiff's complaint that "Defendants do not even address these statements in their brief" (Opp. at 31) is mistaken.  Defendants directly addressed both the allegations of Mr. Suri's "personal involvement" and role on the Integration Board.  (*See* Br. at 37 & n.24.)

16

supposedly informed the executive of the falsity.  *See, e.g., In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2018 WL 4168958, at *17-18 (S.D.N.Y. Aug. 30, 2018).

Plaintiff's cases underscore the inadequacy of his scienter allegations.  For example, Plaintiff cites *City of Birmingham* but omits that the committee there was "directly responsible for setting the risk limits" that were alleged to have been misrepresented and, as such, it was plausible to infer knowledge of the specific information misrepresented.  *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, No. 17 Civ. 10014 (LGS), 2019 WL 719751, at *8 (S.D.N.Y. Feb. 19, 2019).  Likewise, while Plaintiff suggests that scienter was found in *Salix* based on statements that "we have visibility" (Opp. at 33), that court found scienter only after considering alleged specific reports that informed defendants of the falsity of their statements.  *See In re Salix*, 2016 WL 1629341, at *14. [19]

---

[19]   Each of the other cases relied upon by Plaintiff contain far more supporting an inference of scienter than alleged here.  *See In re Vale S.A. Sec. Litig.*, No. 19 CV 526 (RJD) (SJB), 2020 WL 2610979, at *17 (E.D.N.Y. May 20, 2020) (existence of "risk matrix" and statements showing specific knowledge of dam safety); *Citiline Holdings, Inc. v. IStar Fin. Inc.*, 701 F. Supp. 2d 506, 516 (S.D.N.Y. 2010) (knowledge of deteriorating performance inferred where defendants stated that they monitored portfolio value in real-time); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 784 (S.D. Tex. 2012) (knowledge of breakdown in safety process may be inferred from statements that CEO had a "special and targeted focus on process safety."); *Gauquie v. Albany Molecular Rsch., Inc.*, No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591, at *3 (E.D.N.Y. July 26, 2016) (inferring scienter where 40-50% of acquisition's product sales contaminated); *City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d at 372-73 (S.D.N.Y. July 12, 2012) (specificity of statements about "projections and performance" of two divisions as circumstantial evidence); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, Civ. A No. 0:15-CV-02393-MGL, 2016 WL 3981236 (D.S.C. July 25, 2016) (several factors, including suspicious stock sales, gave rise to inference of scienter); *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 246-47 (S.D.N.Y. 2012) (confidential witness allegations supported inference); *Emps. Ret. Sys. of Govt. of V.I. v. Blanford*, 794 F.3d 297, 308-09 (2d Cir. 2015) (confidential witnesses provided specific details); *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 549 (S.D.N.Y. 2020) (defendant's admissions and misconduct surrounding criminal investigation); *see also Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (defendants sanctioned procedures contrary to company policy).

As to the "core operations doctrine," doubts have been raised concerning its continuing viability and, at most, that doctrine constitutes "supplemental support" for scienter. *Das*, 332 F. Supp. 3d at 816 (citation omitted). Further, the doctrine typically applies only when the operation constitutes virtually all of the business, and a "naked assertion" that something is a "key product" is insufficient. *Jackson v. Abernathy*, 930 F.3d 94, 99 (2d Cir. 2020). Plaintiff cannot rely wholly on the core operations doctrine, and has failed to plead facts giving rise to a strong inference of scienter by Defendants.[20]

Absence of Motive. Plaintiff's motive argument is premised on the allegation that Mr. Suri and other members of the executive team received restricted stock awards in 2016 that were to vest in three tranches between 2017 and 2019. (SAC ¶ 129.)[21]

Setting aside that Plaintiff does not explain how a pre-class period award that had nothing to do with 5G somehow incentivized Defendants to commit the alleged fraud, it is well-established that incentive compensation alone is insufficient to establish motive. (*See* Br. at 35-36 (citing cases).) Further, Plaintiff's motive theory makes no sense.[22] Plaintiff cannot reconcile the absence of any alleged stock sales (notwithstanding two alleged corrective disclosures) with his theory of scienter. In fact, Mr. Suri *increased* his holdings during the period, further

---

[20]   Even Plaintiff's cases involved allegations beyond the core operations doctrine. *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 492 (S.D.N.Y. 2004) (confidential witnesses); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 CIV. 8557 (CM), 2013 WL 6233561, at *25 (S.D.N.Y. Dec. 2, 2013) (conscious withholding of information).

[21]   Although Plaintiff seeks to attribute some linkage to a "rapid" integration (Opp. at 37), the language quoted by Plaintiff actually refers to a "sustainable integration." (SAC ¶ 58.)

[22]   Plaintiff's cases recognize that in some cases stock purchases may undermine scienter. *See In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 320 (S.D.N.Y. 2013). Further, two of the motive cases Plaintiff cites involved substantial suspicious sales of stock by the defendants. *See Freudenberg*, 712 F. Supp. at 201; *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 474 n.23 (E.D. Pa. 2014).

18

undermining any inference of scienter.  (*See*  Br. at 37); *see also In re Iconix Brand Grp., Inc.*, No. 15 Civ. 4860 (PGG), 2017 WL 4898228, at *16 (S.D.N.Y. Oct. 25, 2017).

Plaintiff's authorities are not at all to the contrary.  *In re Openwave Systems Securities Litigation*, 528 F. Supp. 2d 236, (S.D.N.Y. 2007), involved the granting of backdated stock options which provided defendants with immediate and risk free returns.  *Id*. at 249; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (bonus of 2.5 times normal salary).  This is nothing like the routine stock grants awarded to Mr. Suri, which he is not alleged to have sold.  Plaintiffs also cites *In re Wellcare Management Group, Inc. Securities Litigation*, 964 F. Supp. 632 (N.D.N.Y. 1997), but this aspect of *Wellcare's* holding has been called into question as contrary to Second Circuit precedent.  *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 161 (S.D.N.Y. 2015).[23]  Plaintiff's generalized allegations that Mr. Suri desired to protect his reputation also are insufficient to establish motive.  *See In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01 Civ. 4388(JGK), 2004 WL 376442, at *7 (S.D.N.Y. Feb. 27, 2004).

The far more compelling inference is a nonculpable one, particularly given Nokia's extensive risk disclosures over the putative class period.  (*See* Br. at 39.)  Plaintiff has failed to plead facts giving rise to a strong inference of scienter by Defendants.

Mr. Suri's Departure.  Plaintiff also attempts to leverage Mr. Suri's departure as CEO months after the alleged corrective disclosures.  Far from a rushed or suspicious ouster, Mr. Suri's departure follows his 25 year tenure at Nokia (6 as CEO of Nokia and 5 as CEO of Nokia

---

[23]    Plaintiff's additional out-of-Circuit decisions are irrelevant. *See In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at *8 (N.D. Ill. Dec. 18, 2007) (incentive compensation may be a consideration but cannot independently establish scienter); *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 661 (8th Cir. 2001).

Siemens Networks – far from an unusual tenure for a CEO), continuing five months in the role after the announcement of his successor and even then he will remain as an advisor to the Board until year-end.  (LP Ex. 5.)  This does not establish a strong inference of scienter.  *See  Das*, 332 F. Supp. 3d at 815-16.  *In re OSG Securities Litigation* involved far more detailed allegations linking the departure to the alleged misconduct.  12 F. Supp. 3d 622, 632-33 (S.D.N.Y. 2014).  And Plaintiff's passing reference to an investigation in Finland (Opp. at 12) is irrelevant.  *See Lipow*, 131 F. Supp. 3d at 167.

**C.      Plaintiff's Section 20(a) Claim Should Be Dismissed**

Plaintiff has not sufficiently alleged a primary violation of Section 10(b), and has failed to allege any culpable participation by Mr. Suri.  The Section 20(a) claim therefore also fails.

## CONCLUSION

The Complaint fails to state a claim against Defendants and ought to be dismissed. Plaintiff's perfunctory request for leave to amend in a footnote is entitled to no weight, and dismissal should be with prejudice.  *See Sketchers*, 2020 WL 1233759, at *19 n.19.

Dated: New York, New York
         August 14, 2020

                                            */s/Susan L. Saltzstein*
                                            Jay B. Kasner
                                            Susan L. Saltzstein
                                            Jeffrey S. Geier
                                            SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP
                                            One Manhattan West
                                            New York, NY 10001
                                            Phone: (212) 735-3000
                                            Fax: (212) 735-2000
                                            jay.kasner@skadden.com
                                            susan.saltzstein@skadden.com
                                            jeffrey.geier@skadden.com

                                            *Attorneys for Nokia Corporation
                                            and Rajeev Suri*

20